Good morning, Your Honors. Christy Hogan, Assistant City Attorney, City of West Hollywood. What I'm going to do this morning is just start out with a little orientation mostly for myself and to set up the argument and then just address the ripeness question that was raised by this Court and reserve any other time that's remaining for rebuttal. So as the Court knows, the plaintiff in this case owns an eight-story building that's located on Beverly Blvd. in the City of West Hollywood. We've had pictures. We've seen the building, yes. So the code enforcement officer goes out, takes a look after a complaint is filed, sees no advertising. You don't have a lot of time, and I think we've got a handle on the facts. Right. I've got to just let me set this up because I won't go deep into it. I understand that you've got a handle on it, but when the code enforcement officer comes back, there's a subsequent inspection. Counsel, take our word for it. We know the facts of the case. I believe you. The citation is given, and that's when the plaintiff does two things. One, appeals the citation, and two, files a Federal court case on the same day. Right. And in the primary objections that the plaintiff had always raised with respect to this case was that his First Amendment rights were violated, that the city's actions were invalid on their face. It was a facial First Amendment challenge because it was a content-based regulation, that there was a facial equal protection argument because other building owners could put up tall walls and he couldn't, and that there was a facial substantive due process problem because there was no basis, rational basis for the city's regulation. So the city litigated those in Federal court on the facial claims for First Amendment equal protection substantive due process. The city believes that the trial court got those issues right, and where the city believes that the trial court went astray was in finding that there was an unconstitutional, uncompensated taking, even though those claims were not yet right. And that's what brings me to the Court's question. Kennedy, we came to the same sequence of conclusions, and that's why we asked for a little discussion about it. Okay. Great. As the Court knows, there are two of them. Was the rightness issue raised below? The rightness issue was not raised. It was preserved as an affirmative defense in the answer. It wasn't raised during the summary judgment motions because, again, the focus were on these facial claims for the First Amendment. What did the takings issue get before the district court? The takings issue got before the district court because of the somewhat complicated, some might say convoluted argument that the plaintiff raises with respect to how the Outdoor Advertising Act bolsters his First Amendment claims, because without finding that there's some takeable interest, some protected property interest that could be taken, obviously, there's not going to be a taking, but there's also not going to be any of the other claims, constitutional violations. So the – in order to find that there is a right taking, there are two elements that are required. The first is that there be a final administrative decision. The second is that the State remedies the compensation. Kennedy, this is the final administrative decision, is it not? May I answer that second? Because the compensation is the easy one, as long as there's a suspense of it. With it, the – in order to avoid that, the plaintiff would have to show first that there was an inadequate State remedy, think First English has taken care of that, there's an adequate State remedy, or that possibly that there is a violation that is not even capable of compensation. Justice Stevens put out the possibility that we had taken it because we didn't like his political views or something like that. Neither of those things have been pled or argued or exist in this case. So there's a – Well, he doesn't have a claim to compensation yet, does he? Because nothing's actually been taken. Well, that's what I'm arguing. The signs are there, as best as I can figure out. Well, that's right. And have been for seven years, and for this part of the city's enormous frustration with this case. But neither here nor there, the courts ask the question if there is a final administrative determination. Arguably not. Certainly there was not when the Federal court case was filed, because it was filed on the same day that the appeal to the citation was. So that hearing had not yet been held. Possibly it's ripened during the course of the litigation because of either the hearing held on the citation or the later hearings held in connection with the settlement agreement. But the city has never had an opportunity just to look at the question of whether or not, for example, it would grant a variance. You know, I don't think that this rises the level of feudal, although if I was a betting woman, I'd probably, you know, say that the plaintiff probably doesn't have a good chance, given the history and how things have gone. But I'm – not to use President Bush's parlance, I'm not the decider here. The Planning Commission would be. So they've never been asked that question and never had a chance to look at it from that point of view. But there have been certainly two administrative hearings that have come up with decisions that were adverse to the – to the – And any State proceedings, any writ proceedings? There have been none. And specifically, and from the beginning, the plaintiff has taken the position that it didn't have to and didn't want to go to State court to exhaust the administrative variance, to challenge the citation, or to bring an action that might change the final decision. So I – so let me just let – I'll stand there unless the Court has a question that – Well, let me – so assuming that the takings claim isn't right, the First Amendment claims, you don't dispute, are before the Court? Yes. Okay. And I think properly decided. The dismissal by the district court of those claims as being moot, well, they wouldn't be moot anymore. The takings claim drops out. Right. The district court came to that very unusual decision where, you know, for one wall, I think the Court got it right all the way in the West. On the East side, the Court dismissed them as moot because the Court had found a taking. But the Court also, in its opinion, you know, specifically starts out by saying that all of the arguments for the West wall were the same as the East wall. So I think it would follow that if there were no taking claim, if you hadn't – Well, the distinction has nothing to do with the First Amendment. No, it does not. The distinction lies entirely in the district court's application of the California statute. That's exactly right. And we have nothing from the district court that I can tell that speaks to the First Amendment claim because he put them aside having reached this resolution on – on the taking claim. Although, because he didn't find a taking for – and I've not lost track of which is East and which is West, but whenever he didn't find a takings violation for one of the walls, I sit there and try to reason it out and say, well, gee, there must sort of be a First Amendment finding in favor of the city there, because otherwise the plaintiff would still have a cause of action for relief on that. But I've already got the feeling I've parsed the district court order more than I can stand parsing, so. Well, the court does analyze the whole West Wall. And in finding that, the court finds – he looks at both the test for non-commercial speech under Outdoor System and specifically finds that the city's ordinance is narrowly tailored to serve a significant government interest and that it has left open ample channels of alternative channels of communication. Also, the court goes on and looks at the Metro Media and Central Hudson standards with respect to commercial speech, because the court acknowledges that the city's not – it's not – it's content neutral, but it does burden both commercial and non-commercial speech, and goes through that analysis, finding also that the city has a legitimate government goal that's – that the ordinance is narrowly tailored to achieve the goals of. So I think that there is a complete – Well, if you reach those issues for one wall, you've got to assume the analysis is going to be the same as it was for the other wall. Right. I mean, there's nothing different about the East and West as regards to those issues, is there? No, there's not. And the court says as much. In the decision, the district court says that the same issues were raised. So he just comes to different dispositions of them. Okay. Thank you. Please, the Court. My name is Gary Mobley. I'm the attorney for the plaintiff, who is also the Respondent and cross-appellant in this matter. Your Honors, the present case raises a basic, straightforward issue of my client's right to change copy on two lawfully erected mural signs, and illustrates the problems created when the City attempts to regulate speech based on content, because the entire dispute here arises from the fact that the City had no problem with the original mural signs and the content of the messages displayed there, but when the content of that copy was changed, they objected. We have raised – Let me make sure I understand what you mean by content. Are you drawing the distinction between art and non-art, or drawing the distinction between the substance of the message, that is, the change from being a veteran's memorial to a more overtly commercial advertising form? Both. It is from art to commercial copy on one of the signs. That's the East Wall sign that was determined to be legal. It's the subjective determination of the content of the message on the other sign, because as we briefed below, the City had no problem with a sign advertising a favored message, the Veterans Memorial Fund. The only problem they had is when my client advertised the Jurassic Park. That was not their favored message. Let me stop you there. As a factual matter, what's the basis for saying the City had no problem with an advertising of the Memorial Fund? Two reasons. The original mural signs that were put up were in September of 2000. The copy on both signs was changed in December of 2000, both to – one was a change of copy of the Veterans Memorial Fund sign that was a more explicit advertisement or promotion of the fund. I'm talking about earlier in time. What is it that you point to – and I'm really asking, are you pointing to the December 11, 2000 letter as evidence of the City's approval of the – Oh, yes. Because if you are, that letter is pretty clear in saying that it presumes there's not – that it's artwork, that it's not an advertising message. I agree. I agree. So where's the City approval of the textual message's pre-change? That's what I was trying to address. The subsequent change of copy after – later in December, after that letter was issued, changed the copy on both sides. The Andy Warhol copy changed to – I believe that was a Campbell soup can. And the other side, the Veterans Memorial Fund, was a more explicit promotion of the Memorial Fund. There was no problem the City had with that change of copy. Do you have anything affirmative to point to reflecting City approval of that change signed? No. No. No. But there's no objection. And that is in the record and established. Then the copy is changed a second time, and in June of 2001, and citations are issued for both. However, the citation for the Veterans Memorial Fund is simply a warning. The other side is cited and actually fined. I believe that reflects the distinction that the City was drawing between messages that they deemed acceptable and those they didn't. Okay. So that's your First Amendment claim, and that's what you argued to the district court. Well, actually, it's actually fundamental to both of our claims. The two issues we're raising – Okay. No. Let's get – I want to say that's your First Amendment claim. I'd like – what about your takings claim? The takings claim is based on a very simple concept, that the signs were lawfully erected signs that constitute advertising displays as defined in the Outdoor Advertising Act. And under the Act, my client has an absolute right to change copy as an incident to the fact that these are legally protectable property interests. Okay. And then you say you have a legal property interest under the Fifth Amendment. Now what? Then under 5412 of the Outdoor Advertising Act – No, no, no. Under the Fifth Amendment, what happens? Well – You're saying just a state taking, so this is purely a – there's no Fifth Amendment claim here? No, there is. There very definitely is. But the Fifth Amendment prohibits the taking of property without compensation. Without compensation. In order to establish – Where has that been done here? It's a threatened – it's a threatened taking. It's not an act – Well, that doesn't count. I mean, isn't the law quite clear that you have to exhaust your state compensation remedies before – No. Okay. You tell me. Where is – what law do you have that says that you can and run the Supreme Court clear mandate in Williams that you must go through the – that there's no Fifth Amendment violation until there's a denial of compensation? There's been no denial of compensation here, has there? No, there hasn't. Okay. So where's the taking? Let me – let me take – take the Court through this. First of all, let me emphasize that the claim that's under review here is the first claim for relief that sought declaratory and injunctive relief. That doesn't – that – you're begging the question. I want to know where you get authority to and run Williams by withholding a claim for damages. We don't, Your Honor, and I'm trying to address that problem. Williamson County is a case involving a claim for – for compensation. Yes. That – in that case, the Court imposed two standards for rightness. Number one, you had to have a final administrative decision. Number two, you must pursue a claim for compensation in State court. Correct. The rationale of the Williamson County case is that there's no deprivation of the Fifth Amendment right to compensation until the State has deprived you of compensation, which you have to pursue in State court. Correct. Williamson did not address the separate issue of a claim for declaratory and injunctive relief that an ordinance cannot or – or order cannot be applied because it would constitute a taking. The only – the only holding in Williamson County dealt with an action for damages. But Williamson County says the Fifth Amendment does not prescribe the taking. It prescribes taking without just compensation. Yes. And unless you could establish that just compensation would not be forthcoming, I don't – I'm not sure what claim gets in the door. We'd never be able to address a claim for declaratory and injunctive relief if we had to pursue an action for – for compensation without – it didn't occur in this case. That's the question. Because the City – the City voluntarily held off enforcing the ordinance. So there's no Fifth Amendment violation as far as the Supreme Court is concerned. Let – let me finish the analysis if I can. And if you disagree with me, that's fine. But I need to take you through four or five steps here of Williamson County. First, Williamson County only involved a claim for compensation. It did not involve an action for declaratory and injunctive relief seeking the – Counsel, we do understand that. However, the Santa Barbara case, Daniel v. Santa Barbara, recognized that a – an action was brought to seek declaratory relief, that the action itself was unconstitutional unless it provided for compensation. And the – the – But then it said – didn't it find that the Coastal Commission and the county have the constitutional authority to take the easement, the only possible remedy for the Daniels' alleged physical taking is damages. However, the Daniels have failed to seek just compensation through available State procedures and have not sought damages in this suit. They have instead sought injunctive and declaratory relief that would prevent the county from accepting the easement even upon payment of just compensation. Agreed. Agreed. But the way I read that case is the Court found under the facts of that case, which is a pretty unique set of facts, that there was no right by the plaintiff to challenge in a declaratory relief action the validity of the – the taking action, which in that case was an election to – to accept a proposed or revocable easement. That was based on the facts of that case. The – the Daniel case did acknowledge, and it's cited to Yee v. City of Escondido, a U.S. Supreme Court case. This is on page 385 of the Daniel case, that there's an exception to the second county rightness issue when there's an action challenging the right to take. No. What it says is where a municipal ordinance is facially challenged on the ground that the ordinance does not substantially advance a legitimate State interest no matter how it is applied. Yes. And it goes on to State – Are you – are you claiming that you're within the Yee exemption? Yes, as properly interpreted, because it then goes on to State right after that. In such a case, the property owner's argument is that the municipality has no authority to adopt the ordinance. In other words, it's a challenge to the right of the local government to exercise this taking. And – Counsel, you – that can't be – that can't be what it means, because basically what you're saying then is that every property owner who wants to claim that his property can't be taken comes in and says, you can't take – you can't do this. Therefore, I don't have to exhaust. I can just get a declaration. Listen. It's – it's not me that's saying that. No. It's the California courts. Well. Because – because the action here, if I can – I understand what the court is – where the court is going. But I don't think the court is aware of the fact that, in California, you cannot pursue an action for inverse condemnation until you first challenge the validity of the administrative action itself on the basis that it constitutes a taking. Yes. Where have you done that? That's precisely what we've done here. In – in the – in the State court, in the administrative process? Look. This – this is a challenge. What we're talking about now is a challenge to the regulatory authority. If you look back at Williamson County, Williamson County specifically says in Note 13, it's necessary to contest the procedures provided for review of the commission's actions and those for obtaining declaratory – those provided for compensation. We're not required – Let's stop here. Okay. We're – You – help – we understand the Federal side of things, okay? Okay. What I'm trying to understand is you have a remedy. You haven't alleged that you don't have a remedy in State court. You can go to – through the process, the administrative process and say, hold on a minute. Okay. So then we won't be interrupting each other. Sure. I don't want to interrupt you. Okay. So you go through and in the inverse condemnation proceedings, it's clear. I mean, I wrote an opinion clarifying whether the California law in the rent mobile home area has changed the procedure or not. So we're familiar with that kind of process. And it is clear even under Williamson. If there is a State process where, yes, you establish a property interest and you go to the – through the process and if it's – if you can't demonstrate it's futile to go through it, then you go through that process. And then if they deny you compensation, they take your ability to put the wall signs up, then you have a right claim for just compensation. And if they don't give it to you, you have a Fifth Amendment takings claim. Correct. But under the Williamson County rightness analysis in footnote 13, they contrast judicial proceedings to seek review of the commission's order versus a claim for compensation for damages. The first, the review of the order to challenge that the order constitutes a taking of property and must provide for compensation, you're not required to exhaust administrative remedies. That's expressly in the language of footnote 13 of the Williamson County and it cites to the Patsy v. Florida Board of Regents case. It says exhaustion of review procedures is not required. So what you're saying is that you can come to Federal court, get declaratory relief that you have a property interest in these wall signs, and that you then are entitled to do what with that? To get a determination that the city cannot compel removal of the displays without payment of compensation. Okay. So what you get is a Federal ruling, which is then res judicata against West Hollywood, and then you go and you don't have to go through the California State courts to determine whether you've got a protectable interest, whether or not there was your entire they want to pay you compensation or not. You go in, in hand, basically with I've got a property interest and the only way you can now enforce your regulation is to pay us for it. Yes. Okay. And that's precisely the procedure that's required under California law. Now, let's assume that we disagreed with you on that. Are you what would be the procedure if we said, sorry, we don't think it's right. Okay. You disagree with that. I understand. Are you then foreclosed under State law from ever getting compensation if you are right on the merits? That is the question. I don't know. And I'm going to, in order to answer that question, I'd like to discuss a California case that's cited in our opening brief. It's Patrick Media Group v. California Coastal Commission. It's cited on page 15 of our opening brief. That's a case that involved the California Coastal Commission imposing a condition on a property owner that wanted to develop his property, yes, but one of the conditions is to remove the billboard. That's a violation of State law. The property owner forced the sign to be removed. Patrick Media Group, the billboard company, filed suit for inverse con – effectively for inverse condemnation in State court. The California court said absolutely what they did is wrong. They can't do that. But you lose because you didn't challenge the validity of the decision first in an action to challenge that the order cannot – the order constitutes a taking and has to provide for compensation. And therefore, since you didn't pursue that remedy and the time to pursue that is run, you're out of court, even though they had a viable condemnation claim. And the reason that the California courts have imposed that kind of a requirement is that they want to protect local governments from inverse condemnation cases, and particularly instances where a local government takes an action and later learns that it constitutes a taking. So the California courts want to give the local governments the opportunity and option to either compel removal of the taking of the property and pay compensation or reverse rescind the order. That the rationale for that is explained in the – Kennedy, why are you suggesting that you couldn't go to California State, go through the process before the West Hollywood Planning Commission, get a order from them that you must take the sign down, that you will not be paid for it, and then take that into California State courts to challenge that? That could have been done, although the issue was raised in the administrative proceeding. But it's my consensus it's not required to be done in this situation. What situation wouldn't it be required in? I mean, it seems to me everybody with a takings claim could do what you've done. Actually, most of the cases, and the Santa Barbara case discusses this, most of the taking cases, the only remedy is damages because the taking has occurred. Inverse condemnation is generally designed to provide compensation where a taking has occurred and there's been no condemnation proceedings in that eminent domain. This is an unusual situation in that the taking was threatened and my client elected to file suit challenging the right before the taking had occurred. And it is true that that action can be brought in State court, but it is not true that my client doesn't have a right to litigate that issue in State court. And that's for two reasons. Because under the Yee case, declaratory relief is an available remedy to challenge a takings claim when the relief sought is declaratory and injunctive relief and you don't have to seek compensation. Secondly, even if the Court finds that this is not a right for a Fifth Amendment takings analysis, this is still a recognizable claim under State law. There is an actual and current controversy. And Federal court jurisdiction in this case was properly invoked on the basis of other constitutional rights, First Amendment, Fifth Amendment. Kennedy, and under supplemental jurisdiction we can address it. Absolutely. But then it would not be right because under Williamson there's no claim for that. No. Your Honor, I respectfully disagree with that because I think the Court is being hung up on the concept of rightness for a Fifth Amendment takings claim and whether this States a claim for relief because it's an actual current controversy. This is an actual ---- I don't think that's what we're getting confused on at all. This is a declaratory relief claim based on the Fifth Amendment takings clause. Yes. So how is it not a takings claim? I agree. But even if you say it's not a takings claim because it's not right ---- It's not a right takings claim. It still presents a case or controversy that ---- Well, actually, see, that, that, that has been ---- that dilemma has been avoided because of the suit we brought. Whether we brought the suit in State court or Federal court, we sought a declaration, City, you cannot do what you're trying to do unless you pay compensation.   And that's the choice that Patrick justifies, this two-step procedure. So the only difference is we brought this action in Federal court versus State court. This situation is no different than City of Chicago v. International College of Surgeons, a U.S. Supreme Court case in 1997 at 522 U.S. 156. That case involved a property owner who sought administrative review of, of the application of a historical landmarks ordinance to prevent him from remodeling and rebuilding his property. After an adverse decision by the local planning agency, he filed essentially a writ of administrative mandamus in State court. It was removed to the Federal court on the basis that there were constitutional claims stated for due process, equal protection, and a Fifth Amendment takings claim. The case then proceeded to State to Federal court, got a decision adverse to the plaintiff, and he appealed, and he claimed on appeal, no, you can't do that. These, this claim should have been brought in State court. With all due respect, I think that's precisely what the Justices are suggesting here. The U.S. Supreme Court said no. It was perfectly proper to hear and determine those penitent State court claims under supplemental jurisdiction. Alito, the defendant removed, though, the City removed in that case. It doesn't matter, because the analysis on that is the same. The analysis is, first of all, is there original Federal, Federal subject matter jurisdiction in Federal court? Whether we filed first or they removed, that's the same issue. You're saying that the Williamson exhaustion was accomplished by having a pendant claim or a supplemental claim in this action tied into your other claims, which are clearly Federal. Yes. And that's precisely the analysis in the City of Chicago case, because if the court feels that this is, that you still can't, it's not right for a Fifth Amendment constitutional claim, we still have Federal subject matter jurisdiction under the First Amendment due process and equal protection claims. Therefore, this should be analyzed under supplemental jurisdiction, which, in this case, the court obviously assumed jurisdiction and decided this dispute. There was never any objection by the defendant below that the court could not consider this, these issues, and, therefore, the court implicitly found clearly that if this is analyzed as supplemental jurisdiction, that it had jurisdiction to render this decision. And I respectfully submit that that's the best and most efficient way to present these issues, particularly when you have an interplay of several different constitutional claims. The reason we filed in Federal court was because of that. Thank you so much. No, we appreciate it. It's a very complicated and this is not a fact pattern that pops up very often. I've represented Alcator companies for 22 years now, and I would honestly say that this issue of the takings cases probably involves the most complicated issues in procedural issues I've ever seen. Yeah. I'd just like to make one more comment before I conclude my comments on this issue, and then, unless the Court has any other questions, I'll just leave it. Before I leave the rightness issue, I did want to point out that Williamson County should not be interpreted expansively. Well, let me just call your attention. Are you familiar with the Eighth Circuit and the First Circuit? Eighth Circuit is von Kessenbrock-Proschma v. Saunders, 121 F. 3rd, 373. Eighth Circuit, 1997. We hold that the Williamson requirement applies equally to takings claims for damages and equitable relief brought against the states. And Gilbert v. City of Cambridge, 932 F. 2nd, 51. First Circuit, 1991. The Williamson court's rightness analysis would be completely familiar with those cases? No. None of those cases were cited by the parties, and I haven't reviewed those. I'm not familiar with them. Okay. But I would like to point out that the Williamson case, the ruling, particularly as to the second prong of Williamson rightness, has been called into question by four Supreme Court justices in a concurring opinion by Rehnquist, joined in by three other justices. That's fine, but we're not going to start. You know, Williams is Williams. I understand. We're not going to. Justice Rehnquist isn't even on the Court anymore. So it's a whole new Court, as we were all finding out. But the Supreme Court has also, since then, in the Suitam v. Tahoe Regional Planning Agency, recharacterized the second prong of Williamson County as simply a prudential requirement. Yes. That's why I said prudential. I did say that. Yes, I did. Yes. So, anyhow. Okay. Your time's up. All right. Well, thank you. We could argue all day about this, but at some point we have to have time to think about it. Thank you for giving me the opportunity to address it. That's all right. Thank you. Very quickly, Your Honor, just three points I want to make. The first is, and I don't mean to beat a dead horse, but the trial court can't make a declaratory finding that there's a constitutional uncompensated taking until there's a right claim, because only then would the Court have in front of it information about whether or not the alleged taking was, in fact, uncompensated. And I think that's what Williamson says. And what he's trying to get, though, is a declaration that they have a protectable property interest that can be only compromised, if at all, upon payment of compensation without deciding the compensation issue. Right. And I don't think for that reason of Williamson, I don't think the Court can do it under rightness. But then that segues nicely to my second point, which is, and the reason that he says that he would like to do it that way is because the California courts are protecting the cities and governments writing these wrongs and avoiding a taking. But that's what the Federal courts are doing also with the rightness requirement. The Federal courts have, the Ninth Circuit, in fact, has commented from time to time that what cities take away with the one hand, they'll give back with the other hand, given the right opportunity. And the whole system is set up, including the State law where the mandate proceeding is set up to right these wrongs, to avoid the unconstitutional taking. So how in this case, assuming that you were right, that your position is correct, not deciding, just assuming it, what would be the proper way for, whether they can do it now or not, but what would be the proper way under California law for the owner of a building who wants to have a tall wall sign to proceed through the California system to determine whether or not they're going to get compensation at all or adequate compensation? Right. Well, our preference is always that people don't erect them up illegally. No, no, no. I would assume that, to answer the question. There's an application that goes through the city. The city has the opportunity then to make a final determination on how it's going to apply its zoning laws to those particular walls. Then under Civil Procedure 1094.5, there's an opportunity for judicial review of the city's findings, and then after that, if it's found that it was applied in a way that would constitute a taking, then the State has a remedy under First English to provide for monetary damages. That's and if there were no monetary damages given, that would be at the moment or inadequate damages given, that would be the moment that there would be a right Federal taking claim. And it's set up to avoid exactly this, premature claims. We understand all that. I'm just trying to understand what the Right. And then, and then last, I just wanted to make the point that this case originally and primarily raised those First Amendment claims, and that's how it was briefed largely below, which would explain sort of how we end up here arguing rightness at this late stage. Thank you, Your Honor. All right.  Interesting case, and the case argued and submitted. All right. Discussion?     Thank you. Thank you. Okay. All right.
judges: Fisher, Clifton, Fogel